J-S01012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JUSTIN JAUWN KELLUM :
:
Appellant : No. 415 WDA 2022

Appeal from the Judgment of Sentence Entered July 27, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0000566-2020

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: August 28, 2023**

Appellant, Justin Jauwn Kellum, appeals *nunc pro tunc* from the July 27, 2021 judgment of sentence of an aggregate term of 27-60 years' imprisonment, imposed after a jury convicted him of one count of robbery, 18 Pa.C.S. § 3701(a)(1)(i), and two counts of aggravated assault, 18 Pa.C.S. § 2702(a)(1). Further, Appellant's counsel, Melissa Merchant-Calvert, Esq., seeks to withdraw her representation of Appellant pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We grant Attorney Merchant-Calvert's petition to withdraw and affirm Appellant's judgment of sentence.

The Commonwealth provided a thorough and accurate description of the background of this case, as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

On March 22…, 2020, Geraldine Hepfl, a resident of 314 Mesabi Street, City of Sharon, Mercer County, Pennsylvania, was awakened by loud noises, identified as [at least] three very loud gunshots. Ms. Hepfl believed the gunshots occurred sometime after 10:00 p.m. on March 22nd. The gunshots came from the adjoining unit, 316 Mesabi Street. After hearing the gunshots, Ms. Hepfl [went] into her … bedroom because the wall is next to the wall for 316 Mesabi Street. In [the] bedroom, Ms. Hepfl heard pounding on the wall and a female saying, "she needs help, she's been shot." Ms. Hepfl then contacted 911.

Terrika Smith was a resident of 316 Mesabi Street on March 22…, 2020. On that day, she and her friend, Brandon Ringold, had gone to the store and both came back to the residence around 8:00 p.m. Upon arriving back at the residence, [Ms. Smith] saw someone she knows as "Fro" knocking on her neighbor's door. Afterwards, "Fro" then came to 316 Mesabi Street and knocked on [Ms. Smith's] door. At trial, [Ms. Smith] identified "Fro" as [Appellant]. [Ms. Smith] knew "Fro" through friends. [Ms. Smith] let "Fro" inside her residence, where she and "Fro" talked for a while before "Fro" went into the bathroom for a tissue. [Ms. Smith] then went into the bedroom to check on what [Mr. Ringold] was doing. Right after [Ms. Smith] entered the bedroom, "Fro" came from the bathroom into the bedroom with a handgun drawn. "Fro" told [Ms. Smith] … to "give him all the money [she] had." [Ms. Smith] stated … [she] had no money, to which "Fro" stated, "Don't make me shoot you." [Mr. Ringold] attempted to take the handgun from "Fro"[,] and [they] were tussling over the handgun when "Fro" started shooting [Mr. Ringold] several times in the face and stomach. Afterwards, "Fro" turned toward [Ms. Smith] and shot her twice, grazing her in the stomach and striking her in the leg. "Fro" then fled the scene and [Ms. Smith] called 911 for assistance. [Ms. Smith] indicated [that] she and [Mr. Ringold] were taken to St. Elizabeth's Hospital in Youngstown, Ohio.

Officer Anthony Martwinski, City of Sharon Police Department, was dispatched [to] Mesabi Street for a possible shooting. Officer Martwinski arrived with Sergeant Troy Widmyer and Officer Cory Bartley. Officer Martwinski heard a female voice screaming from inside the residence of 316 Mesabi Street, and she sounded as if she was in pain. Officers announced their presence and entered the residence. As the officers progressed into the residence, they noticed large amounts of blood on the kitchen floor and on both walls in the hallway. In the hallway, the officers observed a large black male laying on the ground, identified as [Mr.] Ringold. One

additional victim was located and identified as [Ms.] Smith. [Mr. Ringold] appeared to have a gunshot wound to the face, had large amounts of blood pooling in his mouth, and was unable to answer any questions. [Ms. Smith] told the officers she had been shot by "Fro." Officer Joseph Zajac, City of Sharon Police Department, was dispatched to 316 Mesabi Street on March 22…, 2020, to provide assistance to other officers in processing the crime scene. Officer Zajac took numerous photographs of the scene, the victims, biological evidence (including blood smeared through the residence) and spent shell casings.

Shane Haddle, an operation supervisor/paramedic with McGonigle Ambulance Services, was dispatched to 316 Mesabi Street on March 22…, 2020, around 10:30 p.m. for a possible shooting. Upon being let into the residence by police, Mr. Haddle observed a male laying in the hallway with copious amounts of blood coming from his face area. He also located another patient — a female — who was also injured. Following treatment of both individuals on [the] scene, Mr. Haddle indicated both individuals were transported to St. Elizabeth's Hospital in Youngstown, Ohio. Mr. Haddle described the male's injuries as life-threatening, and the female's injuries as emergent and critical.

By Criminal Information filed on June 19…, 2020, Appellant was charged with:

- Two counts of Criminal Attempt – Murder of the First Degree, in violation of 18 Pa.C.S. §§[]901(a) & 2502(a).

- Robbery, a felony of the first degree in violation of 18 Pa.C.S. §[]3701(a)(1)(i).

- Two counts of Aggravated Assault, a felony of the first degree in violation of 18 Pa.C.S. §[]2702(a)(1).

- Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms, a felony of the second degree in violation of 18 Pa.C.S. §[]6105(a)(1).

A jury trial commenced on April 19…, 2021, and concluded on April 22…, 2021, for the offenses of Criminal Attempt – Murder of the First Degree, Robbery, and Aggravated Assault.[1] On April 22…, 2021, Appellant was convicted of Robbery and two counts of Aggravated Assault, while he was acquitted of two counts of Criminal Attempt – Murder of the First Degree. On July 27…,

- 3 -

2021, the Honorable Ronald D. Amrhein[,] Jr.[,] sentenced Appellant as follows:

- Count 3: Robbery – [10] years to 20 years of incarceration, with 485 days of credit for time served.

- Count 4: Aggravated Assault – [9] years to 20 years of incarceration[,] consecutive to Count 3.

- Count 5: Aggravated Assault – [8] years to 20 years of incarceration[, consecutive] to Counts 3 and 4.

[The t]otal aggregate sentence was 27 years to 60 years of incarceration. On July 29…, 2021, the Commonwealth *nolle prosed* the offense of Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms.

[1] The offense of Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms was [severed] from the other offenses on April 19…, 2021.

Appellant, by and through post-trial counsel, Ross T. Smith, Esq., filed three separate Motions for Enlargement of Time to file Post-Trial Motions on August 27…, 2021, September 29…, 2021, and October 28…, 2021. [Nevertheless, Appellant ultimately did not file a post-sentence motion]. On April 1[2], 2022, Appellant, by and through Attorney Smith, filed a Notice of Appeal *Nunc Pro Tunc* to the Pennsylvania Superior Court. Appellant [timely] filed his Concise Statement of Matters Complained of on Appeal on May 11…, 2022. On June 7…, 2022, Judge Amrhein filed the trial court's [Pa.R.A.P.] 1925(a) Opinion. Following two Motions for Extension of Time to file Appellant's Brief, … Attorney Smith moved to withdraw his representation on September 14…, 2022. [Attorney] Merchant-Calvert … was appointed to represent Appellant on appeal on September 19…, 2022.

Commonwealth's Brief at 1-5 (internal citations omitted).

On October 19, 2022, Attorney Merchant-Calvert filed an ***Anders*** brief and a petition to withdraw, and the Commonwealth filed an appellee's brief in response on November 16, 2022. Thereafter, on April 20, 2023, this Court issued a memorandum decision, in which we determined that Attorney

- 4 -

Merchant-Calvert had not met the requirements of **Anders/Santiago**. We therefore denied her petition to withdraw and remanded the case with instructions. Specifically, we directed Attorney Merchant-Calvert to file, within 30 days of the date of our decision, either an advocate's brief, or a petition to withdraw and brief that comply with **Anders/Santiago**. On May 19, 2023, Attorney Merchant-Calvert filed a new **Anders** brief and petition to withdraw. On June 20, 2023, the Commonwealth submitted a letter, indicating that it intended to rely on its previously-filed brief from November 16, 2022.

In Attorney Merchant-Calvert's new **Anders** brief, she raises the following issues for our review:

> I. Whether the jury's verdict was against the weight of the evidence.
>
> II. Whether the Mercer County Court of Common Pleas had jurisdiction over this matter.
>
> III. Whether the trial court abused its discretion by imposing an excessive sentence.
>
> IV. Whether trial counsel was ineffective for (a) failing to file a *habeas corpus* motion; (b) failing to review discovery; (c) failing to call a witness to testify at trial; and (d) failing to file a [Pa.R.Crim.P.] 600 motion.
>
> V. Whether the trial court engaged in misconduct by (a) stating that Appellant would receive a harsh sentence if he did not accept the plea offer; and (b) telling the jurors that they had to meet on common ground after they announced that their decisions were split.
>
> VI. Whether the Commonwealth engaged in misconduct by withholding D.N.A. results.

**Anders** Brief at 4-5 (unnecessary capitalization omitted).

Attorney Merchant-Calvert asserts that this appeal is wholly frivolous.

Accordingly,

[t]his Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Prior to withdrawing as counsel on a direct appeal under *Anders*, counsel must file a brief that meets the requirements established by our Supreme Court in *Santiago*. The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to [her] client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, … 936 A.2d 40 ([Pa.] 2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that

counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In the case *sub judice*, Attorney Merchant-Calvert's *Anders* brief complies with the above-stated requirements. Namely, she includes a summary of the relevant factual and procedural history, she refers to portions of the record that could arguably support Appellant's claims, and she sets forth her conclusion that Appellant's appeal is frivolous. She also explains her reasons for reaching that conclusion, and supports her rationale with citations to the record and pertinent legal authority. Attorney Merchant-Calvert also states in her petition to withdraw that she sent Appellant a copy of her *Anders* brief. Additionally, she attached a letter directed to Appellant to her petition to withdraw, in which she informed Appellant of the rights enumerated in *Nischan*.[1] Accordingly, counsel complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

**I.**

The first issue raised in the *Anders* brief is whether the jury's verdict was against the weight of the evidence. *Anders* Brief at 11. Attorney Merchant-Calvert avers that this claim is waived. *Id.* We agree.

---

[1] As of the date of this writing, Appellant has not filed anything in response.

Pennsylvania Rule of Criminal Procedure 607(A) states that a weight-of-the-evidence claim "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). Here, our review of the record does not show that Appellant challenged the weight of the evidence below. As such, this claim is waived.

Nevertheless, even if not waived, no relief would be due on this claim. We apply the following standard of review for weight-of-the-evidence claims:

> As a general rule, the weight of the evidence is exclusively for the fact[-]finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. We cannot substitute our judgment for that of the finder of fact. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion.

*Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa. Super. 2005) (internal citations and quotation marks omitted).

As stated *supra*, the jury convicted Appellant of one count of robbery, 18 Pa.C.S. § 3701(a)(1)(i), and two counts of aggravated assault, 18 Pa.C.S. § 2702(a)(1). Section 3701(a)(i) provides: "A person is guilty of robbery if, in the course of committing a theft, he … inflicts serious bodily injury upon another[.]" 18 Pa.C.S. § 3701(a)(1)(i). Section 2702(a)(1) sets forth: "A person is guilty of aggravated assault if he … attempts to cause serious bodily

injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

In the case *sub judice*, the trial court provided the following explanation for why the jury's verdict was not against the weight of the evidence:

> [Appellant] was positively identified at trial by one of [the] two victims (the other [victim] remained hospitalized at the time of trial and was not capable of testifying). The victim's account of the events was substantially corroborated by a neighbor who heard the gunshots and heard the victim crying for help through their shared apartment wall. The physical evidence[,] including photographs of the scene[,] corroborate [the] victim's testimony.

> The victim and neighbor provided testimony from which the jury concluded the Commonwealth had met its burden as to the elements of the crimes of which [Appellant] was convicted. The [c]ourt does not find the verdict to be contrary to the weight of the evidence and will not invade the province of the jury.

Trial Court Opinion ("TCO"), 6/7/22, at 4.

We would discern no abuse of discretion by the trial court. We also add that Ms. Smith testified that Appellant told her to give him all the money she had, and then proceeded to shoot Mr. Ringold in the face and stomach, and Ms. Smith in the stomach and leg. Thus, we agree with Attorney Merchant-Calvert that the first issue raised in the **Anders** brief is frivolous. Appellant

has waived this issue but, even if not waived, we would conclude that the jury's verdict was not against the weight of the evidence.[2]

**II.**

The second issue set forth in the **Anders** brief is whether the Mercer County Court of Common Pleas had jurisdiction in this matter. **Anders** Brief at 14. Attorney Merchant-Calvert posits that this claim is frivolous because the crimes for which Appellant was charged and convicted occurred at 316 Mesabi Street in Mercer County, Pennsylvania. **Id.**; **see also** N.T. Trial, 4/20/21 (A.M. session), at 59-60 (Ms. Hepfl's testifying that she lived at 314 Mesabi Street in Sharon at the time of the incident).

Again, we agree with Attorney Merchant-Calvert. Our Supreme Court has explained:

> Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law. … Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. Every

---

[2] Further, although not raised in the **Anders** brief, to the extent that Appellant sought to claim a constitutional violation, we deem such a claim waived for lack of specificity in Appellant's Rule 1925(b) concise statement. **See** Pa.R.A.P. 1925(b), 5/11/22, at ¶ 1 ("A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. [Appellant's] conviction was against the manifest weight of the evidence presented to the Jury."); **see also Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.") (citations omitted); TCO at 2 (trial court's noting that, with respect to this issue, Appellant's "failure to cite or name specific laws or rights violated results in waiver").

jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code.

Venue relates to the right of a party to have the controversy brought and heard in a particular judicial district. Venue is predominately a procedural matter, generally prescribed by rules of this Court. Venue assumes the existence of jurisdiction.

Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists. The terms are often used interchangeably because they must exist simultaneously in order for a court to properly exercise its power to resolve a particular controversy.

Although each court of common pleas within this Commonwealth possesses the same subject matter jurisdiction to resolve cases arising under the Pennsylvania Crimes Code, that jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances. Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction. Venue in a criminal action properly belongs in the place where the crime occurred. This practice recognizes the necessity of bringing a party to answer for his actions in the place where the crime itself occurred because that is where the evidence and the witnesses will most likely be located. It would be nonsensical to transport defendants, evidence and witnesses from Philadelphia to Erie to resolve criminal charges arising in the former location before a judge and/or jury sitting in the latter location. A change of venue from the situs of the action to a different locale is permitted only upon good cause shown.

*Commonwealth v. Bethea*, 828 A.2d 1066, 1074-75 (Pa. 2003) (cleaned up).

Here, Appellant was tried for his crimes in the Mercer County Court of Common Pleas. Because the controversy at issue arose out of violations of the Crimes Code, the court of common pleas had subject matter jurisdiction.

- 11 -

*See id.* Further, venue was proper in Mercer County, as that is where the at-issue crimes occurred. *Id.* Accordingly, the second issue raised in the *Anders* brief is likewise frivolous.

## III.

The third issue in the *Anders* brief asks whether the trial court abused its discretion by imposing an excessive sentence of 27-60 years' imprisonment. *Anders* Brief at 15. Such a claim implicates the discretionary aspect of Appellant's sentence. According to Attorney Merchant-Calvert, this claim is again frivolous.

> We recognize that:
>
> Challenges to the discretionary aspects of sentence are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Dempster*, 187 A.3d at 272 (most internal citations omitted).

Here, Appellant filed a timely appeal once the trial court reinstated his right to do so. However, it does not appear that he preserved his sentencing

claim at sentencing or in timely-filed, post-sentence motion.[3]   Accordingly, this claim is waived.

Nevertheless, even if not waived, no relief would be due.  We are cognizant that:

> When considering the merits of a discretionary aspects of sentencing claim, we analyze the sentencing court's decision under an abuse of discretion standard.  In conducting this review, we are guided by the statutory requirements of 42 Pa.C.S. § 9781(c) and (d).  Section 9781(c) provides that this Court shall vacate a sentence and remand under three circumstances:
>
>> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>>
>> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

_____

[3] Appellant also arguably waived this claim by not clearly raising it in his Rule 1925(b) statement.  **_See Dowling_**, 778 A.2d at 686 ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.") (citation omitted).  In his Rule 1925(b) statement, Appellant raised the following claims related to sentencing, which we produce _verbatim_:

> 4. The Trial Court erred and abused its discretion as follows: "Excessive Sentence – The Judge informed me that if I did not take the DA's deal and was found guilty of any of the charges, that I would be sentenced to the Highest extent of the Law that he possibly can sentence me to."
>
> ***
>
> 6. The Trial Court erred and abused its discretion as follows: "Judge Misconduct. – Stating that I would receive a harsh sentence if I did not accept the DA's deal…."

Pa.R.A.P. 1925(b) Statement at ¶¶ 4, 6.  We address Appellant's claims regarding the judge's purportedly instructing him to accept the plea deal _infra_.

> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c). In addition, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

> (3) The findings upon which the sentence was based.

> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

**Commonwealth v. Zeigler**, 112 A.3d 656, 661-62 (Pa. Super. 2015).

Here, Appellant was sentenced to 10-20 years' imprisonment on the robbery count, 9-20 years' imprisonment on the first aggravated assault count, and 8-20 years' imprisonment on the second aggravated assault count, for an aggregate term of 27-60 years' imprisonment. Attorney Merchant-Calvert points out that the trial court imposed sentences that were within the standard range of the Sentencing Guidelines. **Anders** Brief at 16; **accord** TCO at 1-2; Commonwealth's Brief at 12. Further, at sentencing, after acknowledging that Appellant was thirty years old and had a prior record score of 5, the trial court noted:

> The effect on Mr. Ringold, particularly, was devastating. Ms. Smith appeared before the [c]ourt and seemed mostly recovered from her injuries. But Mr. Ringold was shot in the face.

> I do not believe an aggravated sentence is appropriate. One, the guidelines are very extensive and significant punishment. The guidelines take into account exactly what happened, especially given the fact that there is a deadly weapon used enhancement. So the sentence is significant, but they will be the high end of the standard ranges [*sic*].

- 14 -

N.T. Sentencing, 7/27/21, at 16-17. In addition, the trial court stated that, in sentencing Appellant, it

> considered the letters from [Appellant's] mother, sister, and aunt, [his] mother's statement in the courtroom, [Appellant's] ADHD, Tourette, and anxiety issues, the facts as found by the jury, his jail adjustment as good, the victim-impact statement of [Mr.] Ringold's mother, and [it] read the entirety of the [pre-sentence investigation report]….

*Id.* at 17.

Based on the foregoing, we would discern no abuse of discretion by the trial court in sentencing Appellant. It appropriately weighed the requisite factors, and the sentence it imposed is not clearly unreasonable. As such, we agree with Attorney Merchant-Calvert that Appellant's sentencing claim is frivolous.

## IV.

The fourth issue raised in the *Anders* brief asks whether trial counsel acted ineffectively by "(a) failing to file a *habeas corpus* motion after this matter was bound over from the preliminary hearing based solely on hearsay evidence; (b) failing to review discovery; (c) failing to call Detective Marc Adamo as a witness a trial; and (d) failing to file a Rule 600 motion." *Anders* Brief at 17 (unnecessary capitalization and emphasis omitted). Though Attorney Merchant-Calvert details why she believes such claims are frivolous, we decline to address them on direct appeal.

"[The] general rule of deferral to [Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546,] review remains the pertinent law on the appropriate

timing for review of claims of ineffective assistance of counsel[.]" ***Commonwealth v. Holmes***, 79 A.3d 562, 598 (Pa. 2013). However, our Supreme Court has recognized two exceptions to this general rule, which both fall within the discretion of the trial judge. ***Id.*** First, ineffective assistance of counsel claims may be reviewed on direct appeal if (1) "extraordinary circumstances" exist "where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice[.]" ***Id.*** Second, "where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness," the trial court has discretion to entertain such claims if there is good cause shown and the defendant knowingly and expressly waives his entitlement to PCRA review. ***Id.*** at 598-99.

Neither exception is satisfied in this case.[4] As such, these claims are premature and, thus, frivolous in terms of this direct appeal. We note, though, that Appellant may raise these claims again on collateral review under the PCRA.

**V.**

---

[4] We note that the trial court addressed the merits of Appellant's ineffectiveness claims in its Rule 1925(a) opinion, concluding that they all failed. However, in doing so, it did not acknowledge the rule set forth in ***Holmes*** that ineffectiveness claims are generally deferred to the PCRA, nor did it explicitly find that Appellant satisfied either of the exceptions conveyed in ***Holmes*** such that his claims should be reviewed on direct appeal. We also observe that Appellant did not knowingly and expressly waive his right to PCRA review below.

The fifth issue raised in the *Anders* brief questions "whether the trial court engaged in misconduct by (a) stating that Appellant would receive a harsh sentence if Appellant did not accept the plea offer; and (b) by telling the jurors that they had to meet on common ground after the jury announced that their decisions were split." *Anders* Brief at 21 (unnecessary capitalization and emphasis omitted). We address these claims separately.

*A.*

The *Anders* brief sets forth that the trial court engaged in misconduct by stating that he would receive a harsh sentence if he did not accept the plea offer. *See Anders* Brief at 21-22; *see also* footnote 3, *supra* (Appellant's averring, *inter alia*, that the trial court informed him that if he did not take the plea deal, he would be sentenced to the "[h]ighest extent of the [l]aw"). The record belies this claim.

At a pre-trial conference on January 14, 2021, the Commonwealth conveyed that it had made a plea offer to Appellant. N.T., 1/14/21, at 2. Appellant's counsel indicated that he reviewed the plea offer with Appellant, and Appellant declined it and stated he would like to go to trial. *Id.* at 3. The Commonwealth put the details of the plea offer on the record. *Id.* The trial court asked if there was any point in trying to negotiate, and Appellant's counsel answered that he did not think Appellant would take any offer at this point. *Id.* at 4. The court stated that was his right. *Id.* The Commonwealth then pointed out that Appellant had a prior record score of 5, and the trial court observed that "[n]o matter what he takes he's looking at a lengthy

- 17 -

sentence[,]" and that "the [p]erson [n]ot to [p]ossess is a significant gravity score…." *Id.* at 4, 5. After noting that the earliest the case could be tried would be March, the trial court went on to continue the case. *Id.* at 5.

The record does not support Appellant's claim that the trial court stated he would receive a harsh sentence if he did not accept the plea offer. Instead, the trial court acknowledged that Appellant had a right to decline the offer, and simply noted that — no matter how Appellant decided to proceed — he would be looking at a lengthy sentence, given his prior record score and the offense gravity score. As such, we agree with Attorney Merchant-Calvert that this claim is frivolous.

*B.*

The **Anders** brief next claims that the trial court "engaged in misconduct by telling the jurors that they had to meet on common ground." **Anders** Brief at 23 (emphasis omitted). Again, the record does not support this claim.

The trial court details what transpired at trial, as follows:

After approximately 4 hours of deliberation, the jury submitted a question, marked as "Court Exhibit 2," asking what happens if the jury cannot all agree on a verdict. The [c]ourt informed counsel of the question outside of the presence of the jury[,] and counsel for [Appellant] had no objection to the [c]ourt giving Pennsylvania [S]uggested [Standard] [C]riminal [J]ury [Instruction] 7.06 "Deliberation and Verdict: Deadlocked Jury." Consistent with the official comment to said charge, the [c]ourt asked the [f]oreperson if any additional clarification of the law or elements would be helpful, the [f]oreperson answered affirmatively, and with no objection from the counsel for [Appellant], the [c]ourt also reread certain charges.

The [c]ourt instructed the jurors they each had a "duty to consult with one another and deliberate with the view towards reaching

- 18 -

an agreement, but only if it can be done without prejudice and damage to (his or her) own individual judgment." The [c]ourt further instructed: "… no juror should surrender their honest conviction as to the weight or the effect of the evidence simply because the opinion of their fellow jurors is different or for the mere purpose of returning a verdict." A jury is presumed to follow a court's instructions. *See[,] e.g.*[,] *Commonwealth v. Stokes*, 839 A.2d 226 (Pa. 2003) (holding a court's instruction that a prosecutor's comments did not constitute evidence was sufficient to remove any prejudice from a failure to object).

At the end of the first (partial) day of deliberations, [Appellant] requested the jury "be deemed hung," which request the [c]ourt denied. The [c]ourt explained this decision with [Appellant] present the next day.

During the second day of deliberations, the jury asked what would happen if it could not reach a unanimous decision on one charge. Again, the [c]ourt met with counsel. Consistent with the official comment to [Suggested S]tandard [C]riminal [J]ury [Instruction] 7.06, the [c]ourt asked if there was any reasonable chance the jury would be able to resolve the remaining charge, and the [f]oreperson responded they probably could if given another hour or two. [Appellant] made no objection to the [c]ourt's comment. The jury continued to deliberate and reached a verdict on all counts.

At no time did the [c]ourt state the jury had to reach any agreement to which they each did not genuinely agree.

TCO at 11-12 (internal citations omitted).

Our review of the record supports the trial court's rendition of what occurred. Importantly, the trial court never told the jurors that they had to meet on common ground. As such, we agree with Attorney Merchant-Calvert that this issue is also frivolous.

**VI.**

The sixth and final issue the **Anders** brief raises is whether the Commonwealth engaged in misconduct by withholding DNA results. **Anders** Brief at 23. Once again, this issue is frivolous.

> With respect to this issue, the trial court explained:

> To the [c]ourt's knowledge, no DNA results exist. [Appellant] filed no motion to compel release of DNA results. There was no DNA evidence of any kind in this trial, nor does [Appellant] identify what DNA evidence he is alleging exists or how it is beneficial to his case. [Appellant's] [c]ounsel had the right to point to the absence of DNA evidence in arguing the Commonwealth failed to meet its burden.

TCO at 13. **Accord Anders** Brief at 23 ("There is no indication on the record that any D.N.A. results even existed; therefore, there were no results for the Commonwealth to turn over. There are no facts on the record that supports Appellant's appeal on this issue and[,] therefore[,] this claim is frivolous."); Commonwealth's Brief at 20 ("The Commonwealth was not in receipt of a DNA report and did not utilize DNA evidence as part of its case-in-chief. Neither Appellant nor his counsel filed a Motion to Compel such DNA evidence should a report exist. Trial counsel had every opportunity to address to the jury in closing argument the Commonwealth's lack of DNA evidence."). As the record supports the trial court's conclusion that DNA tests were not conducted, we deem Appellant's final issue frivolous.

To conclude, we agree with Attorney Merchant-Calvert that Appellant's issues are frivolous, and note that our review of the record reveals no other, non-frivolous issues he could pursue on appeal. As such, we grant Attorney

Merchant-Calvert's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2023